## In re BERNSTEIN.
## BERNSTEIN v. ASSOCIATES DISCOUNT CORP.

### No. 10547.

United States Court of Appeals
Seventh Circuit.

June 17, 1952.

Rehearing Denied July 15, 1952.

Arthur S. Bluestein, Chicago, Ill., for appellant.

Arthur Chittick, Chicago, Ill., Joseph G. Pavian, Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and FINNEGAN and SWAIM, Circuit Judges.

FINNEGAN, Circuit Judge.

The appellant, Maurice Abraham Bernstein, filed his voluntary petition in bankruptcy on August 9, 1949, and was adjudicated a bankrupt on August 12, 1949. The Referee in Bankruptcy, to whom the matter was referred, fixed January 10, 1950 as the last day for filing objections to his discharge.

In due time four of his creditors, namely: Independence Currency Exchange, Inc.; Roosevelt Motors, Inc.; Nathan Lomansky, and Associates Discount Corporation, the appellee, filed objections to the discharge of the bankrupt.

The objections filed by the appellee are alone involved in this appeal. They specified the following grounds:

(1) "On March 2, 1949, the bankrupt secured $9,980.28 on a chattel mortgage from the Associates Discount Corporation and gave a promissory note to secure said obligation, and that there still remains a balance of $8,335.28 due and owing.

(2) "Warranties as set forth in the agreement were false and were known by the bankrupt to be false when he signed the contract and note; specifically he falsely warranted the title to the automobiles which were pledged as security to be free and clear from any and all liens and encumbrances.

(3) "Bankrupt knowingly gave Associates Discount Corporation a false financial statement for purpose of inducing Associates Discount Corporation to make the above loan of $9,980.-28, and Associates Discount Corporation relied on such statements to their detriment."

On January 31, 1950, the Referee caused notice to be served on all parties in interest, including the bankrupt, that hearing on the objections to discharge were set for March 13, 1950. Such hearings begun on March 13, 1950, were continued from time to time until November 14, 1950.

On November 14, 1950, the Referee in Bankruptcy entered the following order:

"This cause coming on to be heard on the petition of the Bankrupt, Maurice Abraham Bernstein, for discharge in bankruptcy, and upon the objections thereto filed herein by Associates Discount Corporation, a corporation, Roosevelt Motors, Inc., a corporation, Nathan Lomansky, and Independence Currency Exchange, Inc., a corporation,

"The Court having heard the evidence and the arguments of counsel and being fully advised in the premises,

"It is ordered that the objections of the said Associates Discount Corporation, a corporation, Roosevelt Mo-

tors, Inc., a corporation, Nathan Lomansky, and Independence Currency Exchange, Inc., a corporation, creditors to the petition for discharge of said Bankrupt, Maurice Abraham Bernstein, be and they are hereby sustained.

"It is further ordered that the Bankrupt's petition for discharge be and is hereby denied."

Thereafter, and on November 24, 1950, the appellant filed his petition to review the Referee's order of November 14 denying his discharge.

More than thirty days later, on January 9, 1951, the bankrupt made a motion before the Referee to complete the record on review by including in the stenographic report of the proceedings therein an oral motion, to dismiss each of the specifications of objections to the discharge, alleged to have been made by appellant through his attorney, on the ground that the objections were insufficient in law and in fact and did not specifically set forth such facts as are required under the bankruptcy law, and that the specifications of objection filed on behalf of Associates Discount Corporation did not set forth the alleged false financial statement, nor did it show that property or credit was given by the objector to bring this objection within the Bankruptcy Act.

This oral motion is said to have been denied by the Referee on March 13, 1950.

In his brief appellant states that the Referee denied this motion to complete the record because he had no recollection that appellant did make such oral motion to dismiss the specifications of objections of the Associates Discount Corporation. The petition for review by the District Court of the Referee's order of November 14, 1950, contains no allegations that such an oral motion to dismiss the specifications of objections was made, nor does the petition allege that the referee entered any order in reference to such a motion. Under the circumstances we are compelled to hold that on this record no such oral motion appears to have been made by appellant, and that the first of his alleged contested is-

sues declared in his brief to be: "should the bankrupt's motion to dismiss have been sustained and the bankrupt granted discharge" is not before us for review.

On February 9, 1951, the Referee in Bankruptcy filed his certificate upon the petition for review, and reported to the District Court:

"The evidence showed that:

(1) "On March 2, 1949, the bankrupt herein obtained the sum of $9,980.28 from the Associates Discount Corporation, objecting creditor, on a written representation that he, John Follary and Henry Crane were partners doing business as World Wide Auto Rental Co., and were the owners of certain automobiles which were free and clear of any and all liens and claims whatsoever; and that based upon said representation, said Associates Discount Corporation did loan and advance certain monies and accepted a chattel mortgage and chattel mortgage note upon said cars.

(2) "The evidence further showed that the bankrupt knew at the time he executed the chattel mortgage and chattel mortgage note in favor of Associates Discount Corporation, objecting creditor, that the cars or automobiles upon which the chattel mortgage and chattel mortgage note were given for the monies loaned by said objecting creditors were, at that time encumbered with prior liens."

Attached to the Master's report were the objections filed by Associates Discount Corporation, the transcript of testimony and attached exhibits, and the petition for review.

On hearing, the District Court in its memorandum opinion said:

"The order of the Referee of November 14, 1950, sustaining the objections of Roosevelt Motors, Inc., Nathan Lomansky and Independence Currency Exchange is hereby disapproved; in all other respects said order of November 14, 1950, is hereby approved and confirmed."

A formal order to the same effect was entered in the District Court on November 14, 1951.

Appellant filed his notice of appeal on December 5, 1951. He appeals from the order entered by the District Court on November 21, 1951, which "affirmed parts of the order of the Referee in Bankruptcy, dated November 14, 1950, denying the bankrupt the discharge in bankruptcy based upon paragraph 3 of the specifications of objections of Associates Discount Corporation."

The record discloses that the bankrupt was a dealer in used cars, he was also a partner with one John Follary and one Henry Crane in a partnership doing business as World Wide Auto Rental Company, in Miami, Florida. It appears that on January 29, 1949, the bankrupt appellant executed and issued to appellee a dealer's financial statement on behalf of the partnership, World Wide Auto Rental Company. The statement listed assets of said partnership in the amount of $27,500, and under the heading "liabilities" bore the notation: "Cars bought and paid for by cash."

On March 2, 1949, the partnership, through the appellant, borrowed $9,980.28 from the Associates Discount Corporation, and to secure the same executed a chattel mortgage, also by appellant, selling and conveying to the said Associates Discount Corporation, appellee, six automobiles. The automobiles were not paid for at the time the loan was made and the chattel mortgage executed by appellant. However, after appellant received the proceeds of the loan from the Associates Discount Corporation he did forward at least part of such proceeds to his partner, John Follary, in New Jersey, in payment for the machines in question. It appears further that the automobiles were stolen cars, and that, at the time of the hearing before the Referee, they were in the possession of the Federal Bureau of Investigation, and that John Follary, one of the partners of the appellant, was charged by indictment with the commission of federal offenses in connection with them. Appellant is urging here

that the order of the District Court denying his discharge should be reversed. His contentions, based on the general allegations that the order and findings of the District Court are contrary to the law and to the evidence, may be summarized as follows:

(1) That the bankrupt, appellant, did not receive property or credit based upon the alleged materially false statement;

(2) that the Associates Discount Corporation in granting property or money on credit to the firm World Wide Auto Rental Company did not in fact rely upon the alleged materially false statement, (a) because of the length of time which elapsed from the making of the statement until the grant of credit, and (b) because a chattel mortgage was demanded and given to secure the credit, and

(3) that the statement was not in fact "materially false" in any respect.

I. The portion of the Bankruptcy Act material to the consideration of the issues presented in this appeal is subsection 3, paragraph (c) of section 14 of the Act. 11 U.S.C.A. § 32, sub. c(3). It provides as follows:

"c. The court shall grant the discharge unless satisfied that the bankrupt has * * * (3) obtained money or property on credit, or obtained an extension or renewal of credit, by making or publishing or causing to be made or published in any manner whatsoever, a materially false statement in writing respecting his financial condition."

In the case at bar appellant, as a co-partner in the firm World Wide Auto Rental Company, executed and delivered to appellee in the firm name, a statement of financial condition, dated January 29, 1949, in which he represented as a matter of fact that the automobiles used in firm business "were bought and paid for by cash." The statement was false, appellant himself testified:

"I would never have the full price of a car. I was operating on short funds, and I would drive the car back to Chicago and sell it to a dealer and after I was paid for the car here, I would wire back to Mr. Follary the balance of the money through Western Union."

Again, when questioned about the cars mentioned in the chattel mortgage to appellee, he said he bought them from Follary. The next question was:

"Q. Later you paid him for the automobiles in full, did you? He answered—'No I didn't until I received the check from Associates Discount. In fact when I received the check I boarded a plane in Miami and flew to New Jersey and paid the balance on the cars. There was still due a balance to Mr. Follary of two thousand and some odd hundred dollars.'" In another place, he said: "I had title to every car presented there. I had Illinois titles and later transferred them to Florida, as I was told to do by Associates Discount." "I had a dealer in the State of New Jersey who gave me title to every one of these cars. In fact there is a case pending against him by the Government."

Manifestly under the circumstances disclosed, the statement that the cars used in the business of World Wide Auto Rental Company were bought and paid for by cash, was materially false. It was made to the appellee corporation for the purpose of securing the necessary cash to pay for such cars.

It was pointed out in Francis v. McNeal, 228 U.S. 695, 33 S.Ct. 701, 57 L. Ed. 1029, there can be no doubt that section 5 of the Bankruptcy Act of 1898 recognized a partnership as an entity for certain purposes. But the fact remains that partnership property is owned by the co-partners and that partnership debts are debts of the members of the firm whose liability therefor is direct and primary.

It is well settled law that a false statement in writing by a member of a partnership for the purpose of securing money or property on credit for the firm will justify the denial of discharge in bankruptcy of the partner making the false statement, although it will not necessarily prevent the discharge of an innocent partner. Levy v. Industrial Finance Corpora-

tion, 4 Cir., 16 F.2d 769–773; Frank v. Michigan Paper Co., 4 Cir., 179 F. 776–779; Ragan Malone & Co. v. Cotton, 200 F. 546–550; Annotation 133 ALR 676.

The decision of the Supreme Court in Levy v. Industrial Corporation, 276 U.S. 281, 48 S.Ct. 298, 72 L.Ed. 572, reviewing Levy v. Industrial Finance Corporation, 4 Cir., 16 F.2d 769, seems to us to be decisive against appellant's contention. In that case the bankrupt who made the alleged false statement in writing had the management and control of the corporation in which he and his sister-in-law owned more than two-thirds of the capital stock. In a written statement made for the purpose of securing a loan to the corporation he falsely stated the assets of the company. The loan was made by respondent, Industrial Finance Corporation. The Court said:

> "A man obtains his end equally when that end is to induce another to lend to his friend and when it is to bring about a loan to himself. It seems to us that it would be a natural use of ordinary English to say that he obtained the money for his friend."

II. As to appellant's second contention that because of lapse of time, it appears that appellee did not rely upon the alleged materially false statement. The statement was made on January 29, 1949, the property as credit given on March 2, 1949. We cannot say as a matter of law that merely because of the lapse of 32 days between the making of the materially false statement and the granting of the loan there was no reliance on the statement. Moreover, it should be remembered in this connection that the automobiles involved were purchased in New Jersey, driven to Illinois and registered in that State by appellant, and later driven to Florida and title there registered in the firm name. In Florida the loan from appellee was made, and whatever balance was then due on the cars was paid to the New Jersey dealer from the proceeds of the loan.

Neither are we impressed with the contention that because a chattel mortgage was required and given there was no reliance on the alleged materially false representation.

Collier on Bankruptcy (14 Ed.Col. 1, p. 1362) says:

> "The fact that a loan is secured by collateral makes no difference if the false written statement was a contributing factor in inducing the loan."

In Banks v. Siegel, 181 F.2d 309, the Court of Appeals for the Fourth Circuit, says the fact that a loan company required security for a loan made by it does not necessarily negative its reliance on the borrower's false financial statement. An order denying discharge to the bankrupt involved was sustained.

III. From what has been said in connection with appellant's first and second contentions, it is quite plain that the finding of the Referee, confirmed by the trial court, that the statement made in writing by appellant to secure credit for its firm from the appellee corporation, was materially false is based upon and justified by substantial evidence. There can be no question in this record that the false representation of appellant was relied upon and that $9,980.28 was advanced to the partnership. The order of the District Court denying appellant a discharge in bankruptcy is affirmed.